
Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete Documents



**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| POLICE OFFICER ANTHONY GARZELLA, | : | |
| Plaintiff | : | CIVIL ACTION—LAW<br>No. 05-CV-1626<br>(Judge Caputo) |
| v. | : | |
| BOROUGH OF DUNMORE, *et al.* | : | JURY TRIAL DEMANDED |
| Defendants | : | |

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Defendant, Dunmore Police Association ("DPA"), by and through its undersigned counsel, hereby avers the following facts in support of its Motion for Summary Judgment:

1. The Borough of Dunmore ("Borough") is a political subdivision of the Commonwealth of Pennsylvania.

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete Documents


2. The Borough is an "employer" as defined by the Collective Bargaining By Policemen Or Firemen Act ("Act 111"), 43 P.S. §§217.1-217.10 and the Pennsylvania Labor Relations Act ("PLRA"), 43 P.S. §211.3(c).

3. The DPA is a labor union as defined by Act 111 and the PLRA, 43 P.S. §211.3(f).

4. The DPA is the exclusive collective bargaining representative for certain employees of the Borough's police department, including full-time and active reserve police officers pursuant to Act 111. 43 P.S. §217.1. *Exhibit 1, January 1,2001-December 31, 2003 Collective Bargaining Agreement Between Borough of Dunmore and Dunmore Police Association*

5. This relationship has been embodied in a series of collective bargaining agreements, including an agreement with a term of January 1, 2001 until December 31, 2003. *Exhibit 1*

6. Act 111 requires that collective bargaining for successor agreements must begin at least six months prior to the start of the fiscal year of the political subdivision. 43 P.S. §217.3

7. Consistent with this requirement, the DPA commenced bargaining with the Borough over the terms of a successor collective bargaining

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete


agreement in 2003. *Exhibit 2, Excerpts of Deposition of Anthony Cali at 28; Exhibit 3, Excerpts of Deposition of William Springer at 43*

8. At the time bargaining commenced, William Bonavoglia was President of the DPA, and Anthony Cali served as Secretary-Treasurer. *Exhibit 2 at 27-28; Exhibit 3 at 43-44*

9. Bonavoglia and Cali prepared and presented the DPA's proposals. *Exhibit 2 at 28; Exhibit 3 at 43*

10. Act 111 requires that any declaration of impasse and request for arbitration must be made at least 110 before the start of the fiscal year of the political subdivision. 43 P.S. §217.3

11. Consistent with this requirement, the DPA declared an impasse in a timely manner and requested the convocation of a Board of Arbitration to resolve the issues in dispute on September 18, 2003. *Exhibit 4, September 18, 2003 Letter From DPA Attorney Thomas W. Jennings To American Arbitration Association*

12. In January 2004, Richard Barth and William Springer ran for the positions of President and Secretary-Treasurer of the DPA, and defeated Bonavoglia and Cali. *Exhibit 3 at 44*

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete Documents



13. Barth and Springer asked Cali and Bonavoglia to remain on the DPA's negotiating team, and the former union officers agreed to do so. *Exhibit 2 at 28; Exhibit 3 at 44*

14. Notwithstanding the declaration of impasse, the parties continued negotiating in an attempt to avoid arbitration. *Exhibit 3 at 44*

15. The parties remained unable to agree to a contract, and the negotiations were difficult due to, *inter alia*, the Borough's purported dire financial situation. *Exhibit 2 at 30-31; Exhibit 3 at 45*

16. Interest arbitration proceedings were held before a panel consisting of DPA-appointed arbitrator Thomas W. Jennings, Esq., Borough-appointed arbitrator Richard M. Goldberg, Esq., and Impartial Chairman Alan A. Symonette, Esq. on May 21, 2004. *Exhibit 5, Excerpts of Deposition of Joseph Loftus at 60-62; Exhibit 6, February 4, 2005 Act 111 Interest Arbitration Award at 2*

17. After the hearings, the arbitration panel engaged in executive sessions. *Exhibit 5 at 180; Exhibit 6 at 2*

18. After the arbitration hearing, but before the issuance of an award, the DPA membership considered whether to continue to try to reach agreement on a contract rather than rely on the arbitrators' award.

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete Documents



*Exhibit 2 at 167-168; Exhibit 3 at 45; Exhibit 7, Excerpts of Deposition of Anthony Garzella at 81*

19. Among the issues of concern for the DPA was the possibility that the arbitration panel might order a Civil Service test because of certain demands presented by both sides. *Exhibit 2 at 167-168; Exhibit 7 at 81*

20. In particular, Springer was adamant about avoiding having to take a Civil Service examination, a view shared by most bargaining unit members. *Exhibit 2 at 167-170; Exhibit 7 at 81*

21. On or about February 4, 2005, the arbitration panel issued its award in the matter. *Exhibit 6*

22. The panel awarded a four year contract, with a term of January 1, 2004 to December 31, 2007. *Exhibit 6 at 2*

23. The award also provided certain wage increases to full-time and active reserve officers. *Exhibit 6 at 2-3*

24. The award also provided as follows:

- Effective January 1, 2004, all Active Reserve Officers shall be paid at an annual wage rate of $33,681.50
- The Panel orders the Borough Civil Service Commission to offer an Examination to all current Active Reserve Officer [sic] no later than June 30, 2005. The examination shall be offered to fairly and reasonably ascertain whether the Active Reserve Officers meet the minimum requirements to serve as a Dunmore police officer.

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete Documents



- Active Reserve Officers who receive a passing grade in the Civil Service Examination shall thereafter be considered to be Full-Time Police Officers for the purpose of this agreement and shall be compensated at the following annual wage rate retroactive to the effective date of they [sic] year each has qualified through the civil service.
  - January 1, 2005 - $36,860.19
  - January 1, 2006 - $42,432.59
  - January 1, 2007 - $46, 229.18
- Active Reserve Officers who fail to pass the Examination shall be compensated at the following annual wage rate.
  - January 1, 2005 - $34,691.95
  - January 1, 2006 - $35,732.70
  - January 1, 2007 - $36,983.35

*Exhibit 6 at 3*

25. The award also provided that "[e]ach Active Reserve Officer who passes the Civil Service examination described herein shall thereupon become a member of the current pension plan and such former Active Reserve Officer shall then commence paying 5% of their wages as a pension contribution…." *Exhibit 6 at 4*

26. After the award issued, the DPA had a meeting of its members to discuss whether to appeal the arbitration award during which it was decided not to appeal the award. *Exhibit 2 at 197; Exhibit 3 at 46; Exhibit 7 at 82*

27. After receiving the award, the Borough appointed members to its Civil Service Commission to provide a test. *Exhibit 5 at 83-84; Exhibit 8, Excerpts of Deposition of Ralph Marino at 26*

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete
Documents



28. The Commission retained the services of Stanard & Associates to develop, administer, and score the exam. *Exhibit 5 at 99-100; Exhibit 8 at 27, 35-36*

29. The Commission held three public meetings in connection with the test. *Exhibit 5 at 102; Exhibit 8 at 40-42*

30. At the second meeting, members of the DPA spoke to the Commission regarding their concerns over the test. *Exhibit 2 at 74-76; Exhibit 3 at 51-52, 95; Exhibit 5 at 102-103; Exhibit 8 at 36, 41-42*

31. At this meeting, DPA Secretary-Treasurer Springer exhorted the Commission to keep the test "fair," and criticized plans to make the test open to anyone, instead of limiting the test to currently employed Active Reserve officers. *Exhibit 2 at 75-76; Exhibit 3 at 52, 96*

32. At the meeting, the Commission confirmed that the test would not be "open," but only made available to Active Reserve officers. *Exhibit 3 at 96-97; Exhibit 8 at 37; Exhibit 9, April 6, 2005 E-Mail from William Springer to DPA Members*

33. After the meeting, Springer sent an e-mail to all DPA officers advising them of what transpired at the meeting indicating, *inter alia,*

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete


that the test would cover four specific areas: basic math, reading, grammar, and writing. *Exhibit 9*

34. To help others prepare for the exam, Springer offered to hold a number of study sessions with fellow officers after police update classes. *Exhibit 7 at 83-84*

35. Springer held approximately 5 study sessions. *Exhibit 3 at 32*

36. Active Reserve Police Officer Anthony Garzella was invited to participate in these sessions. *Exhibit 3 at 32; Exhibit 7 at 83-84*

37. Garzella attended one study session, but did not attend any others. *Exhibit 3 at 32; Exhibit 7 at 26-27, 83-84*

38. Concerned about having to take a test, Active Reserve Officer Cali arranged to meet with Borough Councilman Thomas Hennigan. *Exhibit 2 at 59*

39. One afternoon in May, 2005, Cali, along with Garzella, went to Councilman Hennigan's home to discuss the arbitration award and the test requirement. *Exhibit 2 at 59, 61-2; Exhibit 7 at 11; Exhibit 10, Excerpts of Deposition of Thomas Hennigan at 14*

40. During the meeting, Cali asked Hennigan why the Borough did not agree to a contract settlement which would not involve a Civil Service test, and Hennigan stated that it was still possible to resolve the issue

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete Documents


provided the Borough could achieve some cost relief, and that Cali should contact the DPA and get them to work something out. *Exhibit 2 at 61-62; Exhibit 7 at 21*

41. The DPA did not suspend from membership or otherwise discipline Garzella for attending this meeting. *Exhibit 7 at 95-96*

42. The Civil Service exam was administered to interested Active Reserve Officers on May 21, 2005 at Dunmore High School. *Exhibit 7 at 30-31*

43. Garzella took the exam. *Id.*

44. By letter dated May 31, 2005, Garzella was advised that he had failed the examination. *Exhibit 7 at 45; Exhibit 11, May 31, 2005 Letters From Attorney Frank O'Neill to Anthony Garzella and Anthony Cali*

45. Garzella was not terminated as a result of failing the exam, but remained employed as an Active Reserve Officer. *Exhibit 7 at 63*

46. Out of the 13 Active Reserve Officers who took the exam, only three were advised that they had not passed: Garzella, Cali, and Active Reserve Officer Jody Sibio. *Exhibit 12, Results of May 21, 2005 Civil Service Examination*

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete



47. The DPA had no involvement in the selection of the testing company. *Exhibit 2 at 102, 183; Exhibit 3 at 51; Exhibit 7 at 95; Exhibit 8 at 31, 43*

48. The DPA had no involvement with the selection of the test used. *Id.*

49. The DPA had no involvement with the administration of the test. *Id.*

50. The DPA had no involvement with how the test was to be graded, or the actual grading of the test. *Id.*

51. On June 14, 2005, the DPA held a membership meeting to discuss what actions to take regarding the Civil Service examination. *Exhibit 2 at 185-186; Exhibit 3 at 64-65; Exhibit 7 at 88*

52. During the meeting, the membership expressed concerns that if the test was grieved and the DPA prevailed on the grievance, there would be another test *Exhibit 3 at 66*

53. During the meeting, the DPA membership voted to not grieve the test by a 15-3 vote. *Exhibit 3 at 103; Exhibit 7 at 88; Exhibit 19, DPA Minutes of June 14, 2005 Membership Meeting*

54. Notwithstanding the vote, Garzella, Cali and Sibio filed a grievance concerning how the test was scored. *Exhibit 2 at 186-187; Exhibit 3 at 64-65; Exhibit 7 at 89; Exhibit 13, June 27, 2005 Grievance Filed By Anthony Cali, Anthony Garzella, and Jody Sibio*

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete



55. In response to the grievance, the DPA arranged a conference call for the grievants to speak with DPA Attorney Thomas W. Jennings on June 28, 2005. *Exhibit 2 at 186-187; Exhibit 3 at 65; Exhibit 7 at 90; Exhibit 14, June 30, 2005 E-Mail From William Springer to DPA Members*

56. Present during the conference call were Cali, Garzella, Springer, Barth, and Jennings. *Id.*

57. During the call, Attorney Jennings advised the grievants that any grievance could not simply challenge the scoring, but the whole exam. *Exhibit 3 at 65*

58. Attorney Jennings also told the grievants that "he would do everything in his power to negotiate some type of settlement or try to help us in some way, shape or form." *Exhibit 2 at 187*

59. Ultimately, Jennings told the grievants that the most likely approach would be to get a re-test for the three individuals. *Exhibit 3 at 65; Exhibit 7 at 90*

60. Had Attorney Jennings advised that the DPA had a viable grievance challenging simply the scoring the test, the DPA "absolutely" would have done so. *Exhibit 3 at 67*


Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete



61. No one from the DPA ever advised Garzella that no action would be taken on his grievance because of anything he had ever said or done. *Exhibit 7 at 90; Exhibit 3 at 69-70*

62. Garzella has never run for nor held DPA office, nor has he ever openly campaigned for or against anyone. *Exhibit 7 at 78-79*

63. Springer continued to investigate the grievance and contacted the Pennsylvania Chiefs of Police Association. During the call, he explained the situation involving the scoring of the tests to a woman and expressed his concerns about the scoring. The individual advised him that the scoring used in the tests was the standard procedure. *Exhibit 3 at 53-54*

64. Springer also asked whether the tests could be scored another way. He was advised that they could, but the Borough would have had to instruct how to have the test scored different *before* the examination is administered. *Exhibit 3 at 54, 125*

65. After the test results were known to all officers, several came back to the DPA and argued that, under the terms of the arbitration award and collective bargaining agreement, full-time officers had seniority over active reserve officers, and insisted that the seniority list be adjusted


Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete



accordingly or else grievances would be filed. *Exhibit 3 at 143-144, 147; Exhibit 1 at 4 (Article 6)*

66. Based on these members' positions, on August 3, 2005 the DPA submitted correspondence to Borough Manager Joseph Loftus advising him of the new seniority list. *Exhibit 15, August 3, 2005 Correspondence From DPA to Joseph Loftus*

67. As a result of the adjustment, Cali and Garzella—as the only remaining Active Reserve Officers on the force in the wake of Sibio's resignation—were ranked at the bottom of the seniority list. *Exhibit 2 at 97-99; Exhibit 7 at 64-65; Exhibit 15*

68. Garzella filed his Complaint in this matter on August 11, 2005.

69. On August 13, 2005, the Scranton *Times-Tribune* included an article regarding the lawsuits. *Exhibit 16, "Dunmore Officers Sue Borough," August 13, 2005 Scranton* Times-Tribune

70. In the article, Springer was quoted as saying Cali, Garzella and Sibio had failed the Civil Service examination. *Id.*

71. Cali and Garzella filed a grievance over the seniority adjustment. *Exhibit 3 at 143-144; Exhibit 7 at 68; Exhibit 17, September 5, 2005 Grievance*

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete


72. This grievance was denied by the DPA's Grievance Committee. *Exhibit 3 at 162; Exhibit 7 at 68*

73. In January 2006, the Borough passed a resolution requiring police officers to provide verifiable documentation that the individual has passed a Civil Service examination. *Exhibit 18, Borough of Dunmore Resolution of January 2006*

74. The DPA, through Springer, was adamantly opposed to the resolution, arguing that any such change in employment conditions had to be negotiated and could only be prospective. *Exhibit 3 at 86; Exhibit 10 at 55-57*

75. Springer contacted Cali and Garzella and asked whether they wanted the issue concerning the resolution grieved, and they indicated that they did. *Exhibit 3 at 87*

76. The Borough rescinded the Resolution on April 24, 2006. *Exhibit 5 at 150*

77. The DPA would have arbitrated the matter had the Borough not done so. *Exhibit 3 at 163*

78. The grievances in this matter are the only grievances Garzella has ever filed. *Exhibit 7 at 79-80*

79. Garzella was employed by the Borough of Dunmore. *Exhibit 7 at 78*

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete



80. Garzella was not employed by the DPA. *Id.*

81. Garzella does not contend that the DPA demoted him. *Exhibit 7 at 85*.

82. Garzella does not contend that the DPA has refused to promote him to the position of full-time officer. *Id.*

83. Garzella does not contend that the DPA failed to provide him of oral or written notice of charges against him, or an opportunity to respond to said charges. *Id.*

84. Garzella does not contend that the DPA failed to provide him with a hearing. *Id.*

Dated at Philadelphia, Pennsylvania this 18th day of September, 2006.

**JENNINGS SIGMOND, P.C.**

/s/ Stephen J. Holroyd
STEPHEN J. HOLROYD, ESQUIRE
ATTORNEY I.D. # 61434
The Penn Mutual Towers, 16th Floor
510 Walnut Street
Philadelphia, PA 19106-3683
(215) 351-0670